Ruffin, Judge.
The words of the art of 1802, (Rev. c. 618) — *• if any number of slaves shall plot or conspire the murder of any person whatsoever, they shali suffer death,” upon which the second count of the indictment is drawn, do by themselves create a substantive offence_ Arguments from the context have been urged to show, that they are connected with the preceding words— (i shall conspire to rebel, or snake insurrection avid that no conspiracy to murder is within the act, unless it have also for its object a change of the conspirator’s state of servitude.
The Court certainly is not inclined to tear any part of a penal law from its context, to make it more severe__ If the obvious sense of particular words could be restrained by the general purview of the act, the Court would not only feel at liberty, but hound to put the mildest interpretation on them. That would be to obey the words of the Legislature in their true meaning ,* that is, as .collected from all tiie words used.
But we cannot disobey the plain mandate of a statute, expressed in a distinct and substantive manner $ unless indeed the context does show, that the obvious sense is not the true sense. Here two different kinds of conspiracy are expressly and severally mentioned in the first Section ; “ If any number of slaves shall conspire to rebel or make insurrection, or shall conspire or ¡¡lot the. murder qf any person whatsoever.” The structure of the sentence snakes the offences several.
It has been said, that as the act relates to offences committed by slaves, it embraces only such as are connected with their condition as such. That inference by no means follows. It would be to suppose that the Legislature would make no act criminal in a slave, which is not also criminal if done by a free person, unless it *572 bad a view to his enfranchisement; and is contradicted by the acts regulating the trading of slaves, besides many others of police.
Nor can the Court yield to the argument, that the Legislature did not intend to apply a higher scale of morality to slaves (han to free persons, by making a bare conspiracy to murder, without a rebellious intent, a capital felony. That is a consideration, not to be addressed to a Court, because it does not aid in discovering the meaning of a law j but rather to the law maker, in settling the policy of it. Yet it would seem obvious to cither tribunal, that the more debased or licentious a class of society is, the more rigorous must be the penal rules of restraint.
The second and third sections relate to accessories, to a conspiracy to rebel or make insurrection. It is thence inferred at the bar, that the principal offence created in the first section must be correlative, and likewise confined to a conspiracy to rebel, or make insurrection.— The argument,! think, is the other way. It would indeed be, absurd to create the offence of the accessory, where there is no principal offender. But that is not the case here. The first section does create the specific crime of conspiring to rebel, to which the two following refer. It is remarkable however, that the two last sections drop the. words <£ plot or conspire to murder.”— What is the inference from that? Certainly that bring accessory to that species of conspiracy shall not he a felony, but It ft at common law ; but not that those words, omitted in the second and third section, should not, when used in the first section, create in that section the principal felony of conspiring to murder.
Another consideration presses itself on our notice_ The crime of conspiring among slaves against the lives of those to whom they owe immediate domestic allegiance is, tho* not of so extensive consequence, more to be apprehended than that of general insurrection. It is wore likely to *573 be of frequent occurrence, and is more dangerous iban the other, because it is not so easy of resistance. It cannot be doubted thaf the Legislature bad, in the passage of this, act, a care of tho lives of those exercising dominion over slaves. Yet hew could a Court put such a meaning upon the terms employed, if their general and more extended signification, as imported by them per se, be once limited as contended for? If the murder meant be a murder growing out of a conspiracy to rebel* then a conspiracy to murder the master, much less any other member of his family, would be out of tito act. For the conspiracy tr> rebel surely means an attempt to throw off, not tho particular allegiance of the master or mistress, but the general allegiance to the country, by subverting the government, or that principle of it which fixes their servile condition.
i therefore think the opinion of the Superior Court right on this point*
The other question is, whether the acquittal of one of two pers'>ns, charged nominalim in the same indictment with a conspiracy, is an acquittal of the other, in this indictment six are charged. The case states, that the evidence went only to a conspiracy between Tom and Donum ; yet the jury found Tom guilty generally. That might well be done, tho’ Donum were not guilty ; because it is sufficient to show a conspiracy between Tom and any one of the others. If the case rented there, the judgment would be without difficulty affirmed ; for tiiis Court cannot grant a new trial, for the reason'that the verdict is against evidence. Hut the Court below instructed the jury, that they might convict the prisoner, altho’ they believed all the other persons, except Donum, t<> be not guilty, notwithstanding She previous acquittal of Donum upo» tsame indictment. The case is, Iherc-fo«e, upon the ir.r.trurtions given, the same as if Domini and the prisoner were the only Defendants.
*574 Conspiracy being a crime, requiring the guilty cooperation of two, at least, to constitute it,in which there is a mutual dependence • if the guilt of each upon that of the other, principle would seem to demand, that all the accused should he jointly tried and convicted, or acquitted. In oilier cases of dependent crimes, that upon which the rest depends must be first established, Surh is the law between principal and accessory. The reason is, that there may be as full defence as possible upon the very point of the principal’s guilt, by that principal himself, who is best able to make it. To make that rule effectual, it became necessary to establish another, that, but by the accessory’s own consent, no proof of the principal’s guilt should be heard against him, until it was first, established against the principal himself. The rule arises out of the nature of dependent criminality. Now conspirators may be said to be co-principals. The guilt of both must concur, to constitute that of cither ; and it must consist of a joint act, and it makes one crime in both. As the trial of one need not precede that of (he other, the trial of both ought to be concurrent. I think it more than probable, that anciently such was the. course. But clearly, now it is ot her wise. There are many precedents of the separate trial of persons indicted for offences, that could not be committed by less than two. (Rex v. Sudbury 1 Lord Raymond 484. S. C. 12 Mod. 262. Rex v. Kinnersly, 1 Str. 193. Rex v. Niccolls, 2 Str. 1227.) It is too late now to question it.
But it can never follow from those cases, that where one of the persons, the establishment of whose guilt is essential to the conviction of the other, has been legally acquitted, the other does not also thereby become discharged. It cannot be, that a man can be held guilty to any purpose, who lias, in due course of law, been found not guilty. The analogy between this case and that of the accessory ik strict. The acquittal of the principal is an immediate and absolute discharge of the accessory *575 Fop there can be no aid given to a deed, when the deed itself was never perpetrated. So, where guilt consists in the joint act or intent of two, and it is found that one of them did not join in the actor intent, it is conclusive as to both. For A could not conspire with B, if the latter did not conspire at all. In all the cases, therefore, a verdict affirming the guilt of fewer persons than could commit the crime, and affirming the innocence of all others charged, has been held to be an acquittal of all. That of Rex v. Sudbury, before cited, was for a riot. Two of the Defendants were found guilty, and the others acquitted ; upon which all wore discharged. This case is fully recognized in Rex v. Scott (3 Bur. 1262) where six were indicted for a riot j two. were not tried, two acquitted, and two convicted. There was judgment against the convicts, because the verdict must be held to find them guilty with the two not tried. If all had been acquitted but the two, Lord Mansfield’s opinion would have agreed with Lord Holt’s. The doctrine (if this last case, it will be seen, is, that some of the offenders may be punished, before the guilt of all is established against all, and in that respect, agrees with the previous cases of ICinnersly and Niccolls. These were indictments for conspiracy. in each of them, one Defendant was found guilty , but in one of them the other was dead, and in the other, not in Court. There were, motions in arrest of judgment, on the ground that both should be convicted, and that the dead man never could be, and line other never might be tried, or might be acquitted, which would make a contradiction in the record. The motions were overruled; because the guilt of the co-defendant was found, as against the convicted Defendant, and there was then no repugnancy ; arid where the one was dead, there could not be another trial, and therefore no contradiction and where one had not pleaded, though he was not concluded by the first verdict, and might traverse his own guilt, and be subsequently acquitted, yet the *576 possibility of it should not intercept tlie stroke of justice on him already found guilty. This is the whole extent of those cases : that where one party has not been tried, and can or may never be tried, the other, being convicted, shall immediately suffer. But they neither touch the question, what shall be the effect, upon him who is attaint, of the subsequent trial and acquittal of the other Defendant; nor the other question now before us, what shall be the effect of the previous acquittal of the other Defendant. Upon those points, I have been able to find no adjudged case. But we are not left without analogies, equally instructive. An accessory may, at his own desire, be tried before the principal, and by consequence may be convicted and punished. Yet, where both have been attainted, the reversal of the attainder of the principal ipso facto reverses that of (he accessory, and his' heir may enter (Lord Sanchar’s case, 9 Rep. 117). This follows, from the dependent nature of the charge against the accessory. If a reversal, for mere error in law, of the principal’s attainder thus operates in favor of the. accessory, the conclusion seems to be a necessary one, that tin? subsequent acquittal of In- principd by a jury shall have an equal effect. And as the accessory could not again be put upon trial, or rather convicted, fir want of a conviction of the principal, the inference cannot, be avoided, that by such subsequent acquittal of the principal, the accessory is also acquitted. The corpora! suffering cannot indeed be cancelled. But all the continuing consequences — corruption of blood, escheat and the like — immediately cease. If the acces-ory may thus avail himself of the subsequently established innocence of the principal, much more would we expect the previous acquittal of the latter, to be the acquittal of the former. Ajid so we find it immetnorialiy held. And so, 1 think, it is in conspiracy and other like cases. A conviction and sentence of one only,, are abrogated by the subse- *577 {Juetit acquittal of all others named, the indictment not being mm maltis aliis. All the remaining effects of the judgment cease $ the character becomes purged, and the party’s free law and competency, ut vir bonus et legulis, restored. And a previous acquittal of all the persons but one, between whom the conspiracy is laid, absolutely negatives the guilt of that one ; and lie stands thereby acquitted,
I have said, that I find no case adjudged directly in point. But Rex v. Niccolls, is much more fully reported than in Strange, in a note to Rex v. Oxford (13 East 412). And the reasoning of Chief-Justice Lee, as there given, is strong to support the positions here taken. To illustrate his argument against the motion in arrest, the Chief-Justice puts the case of an action of conspiracy, where one is found guilty upon issue joined, and the other demurs, and has judgment for him. ‘* That shall not,” he says, “ discharge him who is attaint, if the cause of the demurrer do not go to the gist of the conspiracyThis certainly yields to the other side their postulate, that if one be acquitted, though not by the same inquest, the dther shall be too. For the way in which he puts it, is stronger than a direct assertion, that if the demurrer went to the gist of the action, a judgment on it for the Defendant, who put it in, would discharge him who was-attaint. He takes it for granted, as a thing not to he disputed. If this be the case on demurrer, it must bq also on a verdict. It is true, be is speaking of a civil action, in which judgment cannot be rendered against one Defendant alone, as it may upon indictment. But I do not perceive any distinction growing out of that circumstance. The guilt of one Defendant is, in both in* Stances, established by a method, and at a time, dis* tinct from th w by which the innocence of the other appears. The true principle is, that both the guilt and innocence of the party attainted, are affirmed in different parts of the proceedings, and so the record is nugatory: *578 and on the side of humanity, innocence is presumed. It then amounts to the acquittal of him who was convicted; because the acquittal of ttie othei trial of either, for that offence. is a bar to a second
There are other instances, presenting a strong analogy. I allude to action.-, against several, in which one suffers judgovnit, by default, and the oth,er pleads to issue, which is found for him. In cases of contract, a verdict for one enures to the benefit of both; because the contract alleged being joint, the verdict is a demonstration of record, that it did not exist., and the final judgment is arrested. (Porter v. Harris, 1 Lev. 63—Shrubb v. Barrett, 2 H. Bl. 28). It ¡s otherwise generally, in torts and crimes, because they are joint and several. — > But even in torts, if the plea of one Defendant be not personal to himself and several in its nature, but go to the whole action, the rule is the same as that in contracts. (Brigs v. Greinfeild et al. 1 Str. 610. S. C.—2 Ld. Ray. 1372). There two were sued in trespass for seizing and selling Plaintiff’s goods. One let. judgment by default pass ; the other pleaded a distress for rent, and the li-cence and request of the Plaintiff to sell the goods, and it was found for him. The judgment against the first was arrested; because it appeared upon the whole record, that the Plaintiff had no cause of action. Thus, the finding for one or errules the confession of the other in the same suit. These cases arc exactly applicable. It is true, that indictments for conspiracy are not to all intents joint; for, where-more than two are charged, some may be acquitted, and the conviction of the rest, if two, will be good. But it is strictly joint, so'far as respects the constitution of the offence by two. And if it appear in the record, in any manner, that two did not participate in'the unlawful intent, all are discharged; because neither is guilty of that offence. The only departure from this has been, in passing sentence on one, before the other was convicted. But one has never been *579 convicted, after all the others charged were acquitted; and wre think cannot be.
If the acquittal of part and the conviction of part be by the same juques:, if is plain from the cases, that all are acquitted, unless the number uf convicts be sufficient to constitute tin* crime. The principie to be. elicited from the cases, and the preceding cour-e of reasoning satisfy my mind, that with the execution of the- intermediate infliction of punishment, between ’he conviction of one and the subsequent acquittal of auoiher, there is no difference between the case of a trial of all by one jury, and the separate trial of each by different juries. The operation, on one, of the acquittal of the other does not arise from tine mode of pronouncing it, but from the fact of the acquittal itself being in due course of law — the guilt of one being dependent upon that of the other.
For this reason the judgment of the Superior Court must be reversed. The judgment of this Court would be, that the prisoner go without day, if only he and Donum were charged ; because the acquittal of Donum would be his acquittal. But as others, not yet tried, are included in the indictment, we can only set aside the verdict for the erroneous instruction to the jury, and submit the case to a second jury, to consider the prisoner’s guilt, as connected with that of the other Defendants, exclusive of Donum.